IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

ROSIE TRUJILLO,                        )
                                       )
                    Plaintiff,         )        **CIVIL ACTION**
                                       )
v.                                     )        No.  14-1127-MLB
                                       )
CAROLYN W. COLVIN, Acting              )
Commissioner of Social Security,       )
                                       )
                    Defendant.         )
_____)


<u>**MEMORANDUM AND ORDER**</u>

　　Plaintiff brought this action for review of the Commissioner's decision denying her application for supplemental security income benefits. Plaintiff claims she is entitled to benefits because she is disabled. Following a hearing, an Administrative Law Judge (ALJ) denied her application and the Appeals Council denied review, making the ALJ's ruling the final decision of the Commissioner for purposes of review.

**I. General Legal Standards**

　　The court's standard of review is contained in 42 U.S.C. § 405(g), which provides in part that "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive,..." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994).

　　Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence as a

reasonable mind might accept as adequate to support the conclusion. The determination is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes a mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F.Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that she has a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents her from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that she is not only unable to perform her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in

the national economy.[1] 42 U.S.C. § 423(d).

Five-step evaluation. The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do her previous work. Unless the claimant shows that she cannot perform her previous work, she is determined not to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003).

The claimant bears the burden of proof through step four of the

---

[1] This standard applies regardless of whether such work exists in the immediate area where the individual lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work. 42 U.S.C. § 423(d)(2)(A).

analysis. <u>Nielson v. Sullivan</u>, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. <u>Nielson</u>, 992 F.2d at 1120; <u>Thompson v. Sullivan</u>, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. <u>Thompson</u>, 987 F.2d at 1487. Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); 404.1520(f, g).

## II. History of the case

ALJ Michael R. Dayton issued a written opinion denying plaintiff's application on April 19, 2012. (Doc. 10). At step one, he found that plaintiff had engaged in substantial gainful activity (SGA) from the alleged onset date of disability, April 2, 2005, through December 31, 2008. There was a continuous 12-month period thereafter in which plaintiff had not engaged in SGA, and the ALJ accordingly examined the remaining steps with respect to the latter period.

At step two, the ALJ found that plaintiff, who was thirty years old at the alleged onset date, had the following severe impairments: fibromyalgia, degenerative disc disease of the lumbar spine, obesity, and asthma. Doc. 10 at 20. He also found that plaintiff had a medically determinable mental impairment (dysthmia, or adjustment disorder with depressed mood), but that it did not cause more than minimal limitation on plaintiff's ability to work and was therefore non-severe.

At step three, the ALJ found that none of plaintiff's

impairments, alone or in combination, met or exceeded the impairments listed in the regulations.

The ALJ next determined that plaintiff has the following residual functional capacity (RFC). She has the capacity to perform light work in that she can lift and/or carry 20 pounds occasionally and 10 pounds frequently; with normal breaks she can stand and/or walk for 6 hours of an 8-hour day and sit for 6 hours of an 8-hour day; and she can push and pull the weights listed above. She can frequently balance, and occasionally climb, stoop, kneel, crouch and crawl. She should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other pulmonary irritants.

At step four, the ALJ found that plaintiff was not disabled because she was capable of performing her past relevant work as a fast food worker. Alternatively, at step five, he found that plaintiff was capable of performing other jobs that exist in significant numbers in the national economy, including push connector assembler, bench assembler, bonder semi-conductor, and touch-up screener. Doc. 10 at 28. As such, he found that plaintiff had not been under a disability since her application date.

**III. Analysis**

Plaintiff contends the ALJ erred in the following respects: (1) by failing at steps 4 and 5 of the sequential analysis; (2) by failing to properly evaluate the medical source and other opinions and (3) by failing to properly evaluate plaintiff's credibility. Doc. 14 at 2.

1. <u>Steps 4 and 5</u>. Plaintiff first contends the ALJ erred by failing to include and consider plaintiff's mild limitation of social functioning in his RFC finding. Plaintiff argues the ALJ erred as a

result by giving an "imprecise and inaccurate" hypothetical to the VE and by failing to consider this limitation in determining whether plaintiff could perform her past relevant work or other jobs. Doc. 14 at 2-4.

In determining the RFC, the ALJ must consider all medically determinable impairments, including those that are not severe. 20 C.F.R. §404.1545(a)(2). The ALJ's opinion shows that he did consider plaintiff's mild limitation on social functioning in evaluating plaintiff's RFC. After extensively analyzing the evidence concerning this limitation and concluding at step 2 that it was not severe, the ALJ noted that the evaluation at steps 4 and 5 required a more detailed consideration of the various categories in "paragraph B" of Listing 12.00 of the Listing of Impairments (SSR 96-8p), and therefore "the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." Doc. 10 at 22. In explaining his subsequent RFC findings, the ALJ considered and gave significant weight to the opinions of state agency medical and psychological consultants, noting they provided specific reasons for their opinions, they were internally consistent, and they were consistent with the record as a whole. The consulting psychiatrist he referred to, Dr. Warrender, opined that plaintiff had an affective disorder and a resulting mild degree of limitation on maintaining social functioning, but that the impairment was not severe and plaintiff's alleged limitations were not fully credible. Warrender cited the report of Dr. Nystrom, an examining psychologist who found that plaintiff had a mild limitation but no psychological disorder that would prevent plaintiff from being

able to understand and remember simple instructions, sustain concentration and persistence, keep pace in a work setting, and maintain appropriate social interactions. Doc. 10 at 459.

The RFC is "the most [a claimant] can do despite [his or her] limitations." 20 C.F.R. 404.1545(a). In spite of plaintiff's limitation, as Dr. Warrender noted, she could maintain appropriate social interactions, understand and remember simple instructions, sustain concentration, and keep pace in a work setting. Cf. Beasley v. Colvin, 520 Fed.Appx. 748, 2015 WL 1443761 (10th Cir. 2013) (ALJ's finding of moderate difficulties under the paragraph B criteria does not necessarily translate to a work-related functional limitation for purposes of the RFC). The ALJ noted elsewhere in his opinion that although plaintiff reported not socializing as much as she used to, she also reported spending time with others on a daily basis, denied having any problems with family, friends or neighbors, denied ever having been fired from a job due to problems relating to others, and reported getting along fine with authority figures. Under these circumstances, the ALJ was not required to include plaintiff's mild limitation on social functioning in the RFC. The ALJ's resulting RFC without any work-related limitation on social function was supported by substantial evidence. See Garrett v. Colvin, 2013 WL 5432415 (N.D. Okla., Sept. 27, 2013) (no error in determination that plaintiff's mild limitation in social function did not carry over to RFC). Additionally, because the ALJ permissibly found that this was not part of plaintiff's RFC, the ALJ did not err in posing a hypothetical to the vocational expert without the limitation. Nor did the ALJ err in finding that a person with plaintiff's limitations could perform her

past relevant work. That finding was supported not only by the testimony of the vocational expert, but also by the fact that plaintiff had performed such work for several years despite having an affective disorder.

2. Consideration of medical source and other opinions. Plaintiff next contends the ALJ failed to properly evaluate the medical source opinions of Dr. Shirley Wang, plaintiff's treating rheumatologist, and Dr. Wang's physician's assistant, Rebecca Anderson, both of whom provided opinions that plaintiff's impairments prevented gainful employment. Doc. 14 at 4-6. The ALJ declined to give these opinions controlling weight, finding instead they were entitled to little weight.

A treating physician's opinion must be given controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Knight ex rel. P.K. v. Colvin, 756 F.3d 1171, 1776 (10th Cir. 2014). As the ALJ indicated, the evidence of Dr. Wang's opinion that plaintiff could not work consisted only of a partially filled-out form and was nowhere supported by findings or estimates of plaintiff's specific functional abilities. It was also inconsistent with substantial other evidence, including evidence that plaintiff continued to work until December 2008 while suffering from the same conditions. See MacDonald v. Colvin, 2015 WL 4429206, at *3 (D. Kan. July 20, 2015)("If the treating physician's statement is not well-supported or is otherwise inconsistent with substantial evidence on record, then it is not entitled to controlling weight and is weighed as any other medical opinion."). And as the ALJ pointed out,

the opinion of Wang's PA Anderson was more or less identical to Wang's, and was likewise unsupported by specific findings as to plaintiff's functional abilities showing she could not work. These opinions were essentially conclusions on the question of disability -- an issue reserved to the Commissioner -- and the ALJ did not err in failing to give them controlling weight or special significance. See Duncan v. Colvin, ___ Fed.Appx. ___, 2015 WL 1475314, at *4 (10th Cir. Apr. 2, 2015) (citing Soc. Sec. Ruling (SSR) 96-5p, 1996 WL 374183, at *1, *2, *5 (July 2, 1996)).

Plaintiff next asserts that the ALJ erred by giving significant weight to the opinions of reviewing state agency doctors. In particular, plaintiff argues that one of the doctor's reports had "shaky underpinnings" because, according to plaintiff, it included an incorrectly scored mini-mental state exam. Doc. 14 at 7. Plaintiff's argument that the test was incorrectly scored appears speculative at best. Doc. 14 at 7.[2] But even if the reviewer in fact made a two-point error in scoring, as plaintiff apparently claims, it would not warrant disregarding the doctor's ultimate conclusions or require a remand. Plaintiff's claim that the testing showed that plaintiff's memory is impaired (Doc. 14 at 8) is based on conjecture rather than on medical source evidence. Moreover, the argument ignores those portions of the memory testing on which plaintiff performed well and which support the reviewer's conclusions, including his finding that plaintiff could

_____

[2] For example, plaintiff assumes without citing evidence that plaintiff garnered zero points on two portions of the test because the reviewer wrote in his report that plaintiff "made little effort" to do these portions. See Doc. 10 at 439. Plaintiff fails to show, however, how the test was actually scored.

understand and remember simple instructions. The ALJ did not err in relying on these opinions.

Plaintiff next argues that the ALJ erred by failing to consider third-party function reports from her significant other. Doc. 14 at 8. The Commissioner appears to concede that the ALJ erred by not discussing these reports, Doc. 17 at 8, but argues the failure to do so was harmless. The court agrees. In addressing plaintiff's credibility, the ALJ concluded that plaintiff's subjective complaints "are found to be exaggerated and inconsistent with the other evidence, including the clinical and objective findings of record...." Doc. 10 at 26. The reports from plaintiff's significant other were essentially cumulative. They stood on the same footing as plaintiff's complaints, and the ALJ's analysis of plaintiff's credibility necessarily applies to those reports as well. Under the circumstances, any error in failing to discuss these reports was harmless. See Willie v. Colvin, 514 Fed.Appx. 728, 736 (10th Cir. 2013) (citing Buckner v. Astrue, 646 F.3d 549, 560 (8th Cir. 2011)); Eastman v. Colvin, 2014 WL 6675058, *12 (D. Kan., Nov. 25, 2014).

3. Plaintiff's credibility. Plaintiff's final argument is that the ALJ failed to perform a proper credibility determination. Doc. 14 at 10. She contends the ALJ failed to tie his findings to the record and failed to demonstrate any evidentiary inconsistencies in plaintiff's complaints of disabling pain.

The ALJ must consider the entire case record, including the objective medical evidence, in determining whether a plaintiff's subjective claims of pain are credible. SSR 96-7p, 1996 WL 374186, *1 (July 2, 1996). A claimant's subjective complaints are evaluated for

credibility under a three-step analysis that asks:

> (1) whether the claimant established a pain-producing
> impairment by objective medical evidence; (2) if so,
> whether the impairment is reasonably expected to produce
> some pain of the sort alleged (what we terms a "loose
> nexus"); and (3) if so, whether, considering all the
> evidence, both objective and subjective, the claimant's
> pain was in fact disabling.

Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166-67 (10th Cir. 2012)
(citing Luna v. Bowen, 834 F.2d 161, 163-64 (10th Cir. 1987)). "[A]
credibility determination 'must contain specific reasons for the
finding on credibility, supported by the evidence in the case record'
and be 'sufficiently specific' to inform subsequent reviewers of both
the weight the ALJ gave to a claimant's statements and the reasons for
that weight." Hayden v. Barnhart, 374 F.3d 986, 992 (10th Cir. 2004)
(quoting SSR 96-7p, 1996 WL 374186, at *4).

The ALJ cited the appropriate standards in his opinion and
applied them. He reviewed plaintiff's complaints and found that her
determinable impairments could be expected to cause the alleged
symptoms, but that plaintiff's statements concerning the intensity,
persistence, and limiting effects of the symptoms were not credible
to the extent they were inconsistent with the RFC. He tied his
findings to the record, noting among other things, for example, that
despite plaintiff's long history and treatment for fibromyalgia dating
back to almost 2000, she was able to work on a full-time basis through
the end of 2008, and her treatment records indicated that her symptoms
responded well to medication, leaving her feeling "much better" and
"not in pain." Doc. 10 at 24. He noted that plaintiff had a history
of treatment for low back pain as well but that an MRI showed only
mild degenerative changes. Testing indicated no problem with motor

function and no abnormalities of sensation in her lower extremities, and plaintiff was able to ambulate without an assistive device. An examination in 2009 reflected that plaintiff had "no difficulty with orthopaedic maneuvers." Doc. 10 at 24 (citing to examining doctor's report showing, among other things, no difficulty in heel to toe walking or squatting and arising from a seated position). The ALJ also noted that plaintiff had suffered from asthma since childhood, but records showed it had generally been well controlled with medication, with no clubbing or cyanosis, and was indicative of "mild lung disease." Doc. 10 at 24. The ALJ addressed other aspects of the record as well that weighed against plaintiff's assertion that she was incapable of performing any sort of work.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence, provided the determinations are closely and affirmatively linked to that evidence." Adams ex rel. D.J.W. v. Astrue, 659 F.3d 1297, 1302 (10th Cir. 2011). The ALJ considered all of the evidence here, gave specific reasons for his findings on credibility, and tied his findings to the record. Plaintiff suggests that by contrasting her complaints of pain with the lack of support in objective medical findings, the ALJ was inappropriately putting a burden on her to prove the extent of her pain by objective evidence. Doc. 20 at 4. But the consideration of all of the evidence, including objective test results, is required by the regulations, and there was nothing in appropriate in the ALJ's evaluation. The court concludes that the ALJ's finding was supported by substantial evidence.

**IV. Conclusion**

     The decision of the Commissioner denying disability benefits is affirmed.

     IT IS SO ORDERED.

     Dated this 21st day of August 2015, at Wichita, Kansas.


                            s/Monti Belot
                            Monti L. Belot
                            UNITED STATES DISTRICT JUDGE